**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER JOHNSON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **C.A. No. 4:19-CV-02996** |
| | § | |
| **XCALIBUR LOGISTICS,** | § | |
| | § | |
| *Defendant.* | § | **(JURY TRIAL DEMANDED)** |

**PLAINTIFF'S MOTION TO COMPEL
DEFENDANT'S DISCOVERY RESPONSES, MOTION FOR SANCTIONS, AND
REQUEST FOR ORAL HEARING**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Johnson requests that the Court compel substantive discovery responses from Defendant necessary to adequately represent his interest at the dispositive motion and trial phases of this suit. Moreover, Plaintiff Johnson seeks sanctions against Defendant and/or its counsel for discovery abuses. The reasons are set forth below:

## I. FACTUAL BACKGROUND

This is an employment case whereby Christopher Johnson (African American) sues his former employer for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C Section 1981, which has a 4 year statute of limitation.

Plaintiff Johnson began working in Jal, New Mexico for defendant on June 29, 2017 as a commercial truck driver on the day shift. He transported and distributed crude oil. Plaintiff Johnson was subjected to retaliatory discharge one year later e.g., June 29, 2018.

Plaintiff Johnson endured discriminatory animus and disparate treatment because of his race. Indisputably, two *different* non-African American employees on two *separate* occasions initiated oral

and physical altercations with Plaintiff Johnson in March of 2018 at housing provided for by defendant called "the man camp." Bruce Johnson (Anglo) and Elias "Eli" Ashley (Hispanic) harassed Plaintiff Johnson by way of threats of violence including but not limited to hurling racial slurs ("n*gger") and brandishing a knife. Plaintiff Johnson reported their racial offenses to management in March of 2018.

Plaintiff Johnson was also treated unfavorably by management in comparison to his Anglo and Hispanic peers. For instance, defendant typically assigned new trucks to drivers based on their seniority. When it was plaintiff's turn to receive a new truck, defendant abandoned its seniority-based practice and assigned new trucks to drivers with less seniority who are Anglo and/or Hispanic. *And*, defendant disciplined plaintiff for occurrences that it did not hold his Anglo and Hispanic coworkers accountable for violating including allegedly speeding.

Three months *after* challenging race discrimination by Bruce Johnson and Elias Ashley, plaintiff was terminated. His unreliable truck failed to properly account for the true amount of crude oil contained therein. Consequently, there was an oil spill. Importantly, managers rushed to the scene in June of 2018 and admitted that Plaintiff Johnson was terminated by Director Jeff Maronen (an important name to remember throughout this Motion) **not for the oil spill but for the two instances of racial hostility that he reported in March of 2018**. Moreover, witnesses whom plaintiff's counsel located averred that i) oil spills occurred frequently at defendant's workplace and ii) defendant used *some* such spills to get rid of problem drivers. In other words, defendant used oil spills as subterfuge to terminate employees it viewed as trouble. Plaintiff Johnson was viewed as trouble.

Plaintiff filed his initial charge of discrimination with the EEOC on October 24, 2018; he amended such on February 28, 2019.

Defendant sold its business on December 31, 2019 - 10 months *after* knowledge of Plaintiff's amended charge.

## II. SUMMARY OF MOTION TO COMPEL

On **September 15, 2021**, it became evident that defendant and/or its counsel engaged in discovery abuse that includes withholding key documents that supports Plaintiff Johnson's claims of race discrimination and retaliation. Defendant also failed to identify potential witnesses to said race discrimination until then.

To be sure, Plaintiff Johnson propounded two sets of written discovery requests on defendant: i) in **2020,** before oral depositions commenced and ii) in **June of 2021,** after oral depositions commended based on what was learned in said depositions.

During the discovery phase which ended **August 6, 2021**, the parties worked well together to accommodate one another's work and personal schedules. Plaintiff extended professional courtesies by enlarging discovery due dates based on defendant and its counsel being impacted by the February 2021 winter weather storm, a maternal leave of absence, other family medical concerns, conflicts in key witnesses' availability for depositions, and power outages as recent as mid-September 2021 because of Hurricane Nicholas. As well, defendant engaged in considerate reciprocity because of plaintiff's counsel trial schedule and plaintiff's recent medical concern.

Despite the aforementioned professional courtesies, defendant's discovery responses remain deficient even after several oral <u>and</u> written conferences requesting supplementation. *See Exhibit A (initial response to plaintiff's <u>first</u> set of interrogatories), Exhibit A-1 (first supplemental responses to plaintiff's <u>first</u> set of interrogatories), Exhibit B (initial response to plaintiff's <u>first</u> set of production), Exhibit B-1 (first supplemental responses to plaintiff's <u>first</u> set of production), Exhibit D divided into parts 1-3 (initial response to plaintiff's <u>second</u> set of discovery), and Exhibit D-1*

divided into parts 1-3 *(first supplemental responses to plaintiff's <u>second</u> set of discovery)*. To be sure, plaintiff conferred with defendant on February 1, 2021, August 23, 2021, September 7, 2021, September 9, 2021, and September 21, 2021. [1]*See Exhibit C.*

With the threat of a motion to compel looming, defendant *finally* supplemented more significantly on **September 15, 2021.** This supplementation revealed the aforementioned discovery abuse.

## III.  SUMMARY OF MOTION FOR SANCTIONS

In **January of 2020**, plaintiff asked – via interrogatory and a correlating production request - defendant to identify all claims he made involving Elisas "Eli" Ashley including "the investigation undertaken as a result of such complaints, **all individuals who participated - in any way - in any investigation conducted by Defendant regarding Plaintiff's complaints**, **all persons talked to about such complaints including witnesses interviewed,** the outcome of the investigation, and dates of each such action identified herein." *See Exhibit A produced April 3, 2020, Interrogatory number 2, page 7 (Emphasis added).* In response, defendant referred plaintiff to documents bates-labeled XCALIBUR 001199-1251. *Id.*

Turns out on **September 15, 2021**, defendant withheld key information including but not limited to an email string whereby the decision-maker (Jeff Maronen) to Plaintiff Johnson's June of 2018 termination had **actual knowledge** that plaintiff engaged in protected activity in March of 2018 by making an outcry of race discrimination against Elias Ashley. *See Exhibit A-1 produced September 15, 2021, Interrogatory number 2, page 5*. More than seventeen (17) months later and after discovery closed, defendant produced documents bates-labeled XCALIBUR 001285-1304.  *Id. at page 5.* Such revelation is critical to Plaintiff Johnson's claims of retaliation, wherein he bears the burden of proving

---

[1] Defendant supplemented sparingly in response to Plaintiff's February 2021 letter.

**(1) that he engaged in protected activity**, (2) that he suffered an adverse employment action, and **(3) that a causal link existed between the protected activity and the adverse employment action.** *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2002). Plaintiff Johnson must prove that defendant had actual knowledge of his claims of discrimination per prong number 1 and there is a connection to his racial outcry and termination by the decision-maker per prong number 3 above. Plaintiff deposed the decisionmaker, Jeff Maronen, on March 25, 2021 without the benefit of this recently produced email string. *See Exhibit F.* And wouldn't you know it; defendant denied such knowledge before this email was produced on September 15, 2021!

Too, in said email string, defendant identified for the first time a **critical witness** (David McKinnon) to the vile, racially motivated conduct by Mr. Ashley towards Plaintiff Johnson that included brandishing a knife. *See Exhibit G.* In a March 13, 2018 email to decisionmaker Jeff Maronen, an assistant operations manager noted, "I just received notice that Elias Ashley was arrested last night….He was very drunk last night at the man camp and according to [Plaintiff] Chris Johnson, he made several derogatory comments and threatened him with a knife….**Elias' roommate, David McKinnon, also confirmed that he was very drunk and that he heard an altercation**…." *Id at pg 4, bates-label XCALIBUR 001287 (Emphasis added).*

Defendant **failed** to disclose Mr. McKinnon before September 15, 2021 including in its disclosures. *See Exhibit E.* Too, in said emails, Decisionmaker Maronen ordered that photographs of the property damage committed by Mr. Ashley as well as witness statements and police information be collected. *Exhibit G at pg 3, bates-label XCALIBUR 001286 (Emphasis added).* Plaintiff does not have such information.

Plaintiff Johnson is severely prejudiced by this revelation. Plaintiff Johnson deposed several witnesses in this suit including Decisionmaker Jeff Maronen on March 25, 2021. Mr. Maronen was

part of said email string. Plaintiff's counsel would have wanted to examine Decisionmaker Jeff Maronen using said email string especially when Mr. Maronen denied knowing of such specific encounters at his deposition.

Plaintiff Johnson also located witnesses and obtained affidavits from several others. Plaintiff Johnson would have wanted to have interviewed Mr. McKinnon (and any other undisclosed witnesses) but was deprived of that opportunity by defendant's deliberate act to hide his identity until September 15, 2021 – 5 days *after* filing its Motion For Summary Judgment and long after discovery ended. *Dkt #s 21 and 22.*

Consequently, Plaintiff Johnson asks the Court to sanction Defendant and/or its attorneys. Specifically, Plaintiff Johnson requests that discovery be reopened such that he can locate and depose Mr. McKinnon (and any other undisclosed witnesses) at defendant's expense. Plaintiff further prays that the Court order defendant re-produce Decisionmaker Jeff Maronen for his deposition at defendant's expense. To be sure, defendant should be made to assist in locating said witnesses for deposition at its expense, compensating plaintiff's counsel for time preparing for and deposing said witnesses, and paying the deposition fees.

## IV. DISCOVERY DISPUTES

Additionally, much of plaintiff's discovery concerns remain unremedied even after the September 15, 2021 supplementation. Therefore, Plaintiff Johnson has no choice but to seek further intervention from the Court.

### A.
### PROPER LIST OF COMPARATORS ~
### Interrogatory #1, Production #73, 87

**INTERROGATORY NO. 1:**
List every driver who worked or performed duties for Defendant at the Jal, New Mexico location from **January 1, 2014 to December 31, 2018** and including Edwardo Patino, Alem Jimmerson, Mac Williams and Mike Rowe setting forth as to each:

a) their immediate supervisors and Area Managers,
b) **last known residential address and telephone number,**
c) date of hire,
d) race,
e) **all demurrage pay to the driver during this time-frame,**
f) **all oral or written disciplinary actions received by said driver regarding performance** including but not limited to i) spills, ii) overflows, iii) failure to properly follow documented loading and unloading procedures, iv) pre-trip inspection deficiencies, v) safety, and vi) speeding
    a. dates of such performance concerns,
    b. listing the cost or damage such performance issues resulted in (if any), and
    c. **all decision-makers involved in the disciplinary action,**
g) **all documents (e.g., notations, reports, emails, text messages and the like) and recordings concerning or involving work orders, inspections, malfunctions, deficiencies, concerns, and repairs, fixes or replacements needed or requested with their company-issued vehicles and equipment (e.g., tractors, tankers and trailers) and**
h) **date, reason for separation and all decision-makers (where applicable).** *Exhibit A at pg 6-7 and Exhibit A-1 at pg 3-4, (Emphasis added).*

====================

Again, this case was filed because Plaintiff Johnson was held to different workplace standards than his Anglo and Hispanic comparators as it relates to i) being assigned a reliable truck whether new or not, ii) receiving a newer truck when it became available because of his seniority, iii) disciplinary actions e.g., speed alerts and alleged workplace disagreements, and iv) discharge including but not limited to those involving oil spills and overflows.

In Interrogatory #1 outlined above, Plaintiff Johnson asked defendant to simply list all drivers at the Jal, New Mexico location from January 1, 2014 to December 31, 2018. *Id.* Defendant objected to that 5-year timeframe. Instead, defendant used the very narrow timeframe of January 1, 2017 to December 31, 2018 and then was only willing to identify Jal, New Mexico drivers *who had spills* during that 2 year time period. *See Exhibit A produced April 3, 2020, Interrogatory number 1, page 6-7.*

After the threat of a motion to compel, defendant only recently provided plaintiff with a list of all drivers who worked for it in 2017 and 2018 whether they had a spill or not. *See Exhibit*

*A-1 produced September 15, 2021, Interrogatory number 1, pg 3.* But such a short time frame does not give Plaintiff Johnson fair consideration for how defendant treated drivers *before* he was employed and *before* he began complaining of racially disparate treatment.

Courts commonly extend the scope of discovery in employment discrimination cases to a reasonable number of years both before and after the liability period. *Beasley v. First Am. Real Est. Info. Servs., Inc.,* No. 3-04-CV-1059-B, 2005 U.S. Dist. LEXIS 34030, 2005 WL 1017818, at *1 (N.D. Tex. Apr. 27, 2005)( holding that discovery of information both **before and after** the liability period in a Title VII suit may be relevant and reasonably calculated to lead to the discovery of admissible evidence.); *Hernandez v. Clearwater Transp., Ltd.,* No. 1:18-CV-319 RP, 2021 U.S. Dist. LEXIS 8531, 2021 WL 148053, at *3 (W.D. Tex. Jan. 15, 2021) (finding that a four year discovery period before the discriminatory incident was reasonable); *Bell v. Hercules Liftboat Co., L.L.C.*, 2011 U.S. Dist. LEXIS 141820, 2011 WL 6140680, at *1 (M.D. La. Dec. 9, 2011) (holding that plaintiff's discovery requests were "plainly overly broad" where there was no time limitation and concluding that discovery period of three years before the discrimination was reasonable); and *Marchese v. Sec'y, Dep't of the Interior*, No. Civ. A-03-3082, 2004 U.S. Dist. LEXIS 20680, 2004 WL 2297465, at *2 (E.D. La. Oct. 12, 2004) (permitting three-year discovery period).

Plaintiff Johnson prays the Court will order defendant to list all drivers at Jal, New Mexico from January 1, 2014 to December 31, 2018. After all, there is a four (4) year statute of limitation period for 42 U.S.C. Section 1981 claims like the ones made the basis of this suit. Plaintiff Johnson's hire date was June 29, 2017, such that going back to January 1, 2014 is not unreasonable.

Plaintiff also asks that the Court compel responses to subsections b, e, g and h (bolded above for convenience) of Interrogatory #1 which includes but is not limited to these witnesses'

last known contact information and disciplinary histories whether reduced to "Counseling Notices" and including reasons for termination, among other things.[2] Too, defendant claims that some employees were disciplined orally.  How do they know that? Are there records of such? If so, defendant should be compelled to produce those.  But so too did Plaintiff Johnson ask that the decision-makers of such disciplinary actions be identified; they are potential witnesses.

Finally, plaintiff's production requests #73, 87 correlate with interrogatory #1.  *See Exhibit B and B-1, pg 23, 27.*  He seeks documentary evidence of the disciplinary history, performance history, spill or overage history, evaluations and termination documents related to his comparators from January 1, 2014 to December 31, 2018. To date, defendant has cherry-picked which documents, if any, to produce.

Moreover, defendant has wielded their exclusive control over such information and unwillingness to be forthcoming during the discovery phase against plaintiff in this suit despite plaintiff's ask.  To be sure, we need only look at its September 10, 2021 Motion for Summary Judgment pages 10 and 14 as an example. *Dkt #22 also Exhibit H produced herein for the Court's convenience (Page 10, paragraph #30: Defendant claims that "Johnson cannot prove race discrimination with respect to being terminated for his overflow incidents when other employees were not.")(And, defendant's self-serving look at spills in 2017 and 2018 on page 10, paragraph #31)(And, on page 14, paragraph 40 where defendant asserts audaciously that "Even if Johnson could make a prima facie case, Johnson has failed to offer any evidence of disparate treatment of similarly situated employees outside of his protected class other than his subjective assertions.")*

In said motion for summary judgment and different from a manager's 2018 admission that Plaintiff Johnson was terminated *because* of his two complaints of race discrimination, defendant

---

[2] Not all disciplinary actions were reduced on "Counseling Notices" forms. Defendant should be ordered to produce all records of such despite the form.

now claim that plaintiff's spills, speeding alerts, and altercations were problematic. <u>Plaintiff is reasonable in requesting to receive and consider the disciplinary history of his peers and how management responded thereto.</u>

For instance, defendant *now* admits ten (10) days before the discovery period ended– in its **July 27, 2021** responses though first asked in **January of 2020 (Interrogatory #1(f) and Production #73)** - that Steven Horn, Greg Tapia, Antonio Olivo, Daniel Campos, Jose Guerrero, Salvador Perez, Reginald Warmsley, Hovey Levi, David Campos, Edwardo Patino, Mac Williams, Mike Rowe, Bruce Johnson, and Jeremy Jackson were disciplined. *See Exhibit D and D-1, Admission numbers 27, 35, 43, 51, 59, 67, 79, 87, 109, 117, 125, 133, 141, 149, 157 and 165.* Notwithstanding the severely late admissions, Defendant also **failed** to provide documents related to said disciplinary actions of the other drivers. Records of such disciplinary actions are critical to plaintiff's prima facie claims and rebutting defendant's counter-response. Defendant should not be permitted to make claims in its dispositive motion that "….Johnson has failed to offer any **evidence of disparate treatment of similarly situated employees** outside of his protected class other than his subjective assertions" when it refuses to produce all disciplinary actions (formal or informal) related to Plaintiff Johnson's peers. *See Dkt #22 pages 10 and 14 also Exhibit H, pg 2 produced herein for the Court's convenience.*

<u>Consequently, Plaintiff prays that the Court compel defendant produce documents related to the disciplinary history, performance history, speeding history, behavioral history, spill or overage history, evaluations and termination of all drivers at Jal, New Mexico from January 1, 2014 to December 31, 2018.</u>

**B.**
## COMPARATORS' DISCIPLINARY HISTORIES ~
## Interrogatories #7 and #8, Production #25, 26, 27, 28, 29, 30, 79, 80, 88, 89-91, 92, 101-102, 104-105, 106-107 and 129 Admissions #4-9, 23-104, 107-170

**INTERROGATORY NO. 7:**
Identify all oral or written disciplinary actions against Plaintiff up to and including termination and as to each: (i) list all persons involved in the decision to discipline Plaintiff including his termination, (ii) the known roles of each persons, (iii) <u>all</u> specific reasons for such employment action e.g., the disciplinary action and termination**, (iv) all drivers disciplined up to and including termination for the same or similar reasons as Plaintiff from January 1, 2014 to December 31, 2018,** and (v) whether any other person was held responsible for, or disciplined along with, Plaintiff for his or her involvement as to each such incident.

**INTERROGATORY NO. 8:**
As to Bruce Johnson, Elisas "Eli" Ashley, Shannon Smith, Edwardo Patino, Alem Jimmerson, Mac Williams, Mike Rowe, Reginald Warmsley, Jerry Miller, Mike McKey, and Jeff Maronen, state the following: their dates of hire, dates of separation, all job titles held, **all reasons for separation with Defendant and all decisionmakers involved in said separation.** *Exhibit A at pgs 9-10 and Exhibit A at pgs 7-8 (Emphasis added).*
=====================

In Interrogatories #7 and #8 outlined above, Plaintiff Johnson asked defendant to identify the disciplinary histories (e.g., spills, overflows, speeding alerts, failures to properly load or unload, among other things) up to and including discharges of his comparators from January 1, 2014 to December 31, 2018. *See Exhibit A produced April 3, 2020, Interrogatory numbers 7 and 8.* Defendant failed to fully answer such and instead referred back to answering *only as it relates to drivers who had spills*. Post-termination, defendant makes claims against Plaintiff Johnson that go beyond the two spills e.g., alleged speeding, altercations, and the like. As such, defendant placed the disciplinary histories of its drivers in play. Consequently, defendant should be compelled to produce such.

Plaintiff's production requests #25, 26, 27, 28, 29, 30, 79, 80, 88, 89-91, 92, 101-102, 104-105, 106-107 and 129 and admissions #4-9, 23-104, 107-170 correlate with interrogatories #7 and 8. *See Exhibit B and B-1 and Exhibit D and D-1.*

For all the reasons cited above in "Section A. Proper List of Comparators" including but not limited to the fact that such disciplinary and termination information is needed to make his *prima facie* burden <u>and</u> respond to defendant's burden to articulate some legitimate, nondiscriminatory reason for the adverse employment action as challenged by defendant in its Motion for Summary Judgment pages 10 and 14, Plaintiff Johnson requests that <u>the Court order defendant to list and produce documents related to the disciplinary history and termination records of all drivers at Jal, New Mexico from January 1, 2014 to December 31, 2018 along with identifying the decision-makers involved therein.</u>

**C.**
**PROTECTED ACTIVITY BY PLAINTIFF ~**
**Interrogatory #2, Production #34, #45, #74**

**INTERROGATORY NO. 2:**
Please identify with specificity any and all claims or complaints including but not limited to those concerning discrimination, retaliation, violence, and threats made <u>by</u> Plaintiff to or against Defendant including but not limited to those involving Bruce Johnson and/or Elisas "Eli" Ashley setting forth as to each: the persons receiving the complaints, the persons he complained about, the exact nature of the complaints, **the investigation undertaken as a result of such complaints, all individuals who participated - in any way - in any investigation conducted by Defendant regarding Plaintiff's complaints, all persons talked to about such complaints including witnesses interviewed, the outcome of the investigation**, and dates of each such action identified herein. *Exhibit A at pg 7 and Exhibit A-1 at pg 4-5.*
=====================

Plaintiff has a claim of retaliation. After twice reporting to management that he was threatened with violence by Bruce Johnson and Elias Ashley and called racial slurs including "n*gger", plaintiff was disciplined and terminated soon thereafter.

In Interrogatory 2 outlined above, plaintiff asked defendant to list all complaints it received from him regarding discrimination, retaliation or misconduct including those involving Bruce Johnson and Elias Ashley.

To meet his *prima facie* burden, it is important to know what protected activity by plaintiff

12

defendant knew of <u>and</u> when.  Plaintiff must also learn what investigation, if any, defendant took concerning his outcries in an effort to defend against defendant's defenses.

Again, after asking for more than one year, defendant finally produced a new string of emails dated March 13, **2018** related thereto on September 15, **2021**. *See Exhibit G.* The email indicates that Elias Ashley's roommate was a witness to his vile conduct.  Plaintiff never knew of this potential witness until then.

Next, the email string mentions that witness statements were ordered.  Plaintiff never knew of this before September 15, 2021 and does not have such witness statements.

Finally, the email string mentions that photographs of the physical damage Mr. Ashley caused when he confronted Plaintiff Johnson was also ordered.  Plaintiff never knew of this before September 15, 2021 and does not have such photographs.

Because of defendant's refusal to produce the aforementioned emails involving Mr. Ashley before **September 15, 2021** and despite being asked in **2020**, how can Plaintiff Johnson have confidence that no such documents exist as to the time that Bruce Johnson verbally attacked him?

<u>Plaintiff asks that the Court compel responses to all such complaints by plaintiff and its handling and disposition of such including listing all witnesses involved as requested in interrogatory #2.</u>

Finally, plaintiff's production requests #34, #45 and #74 correlate with interrogatory #2. <u>Plaintiff Johnson asks the Court to order defendant produce all such witness statements, photographs, disciplinary actions, and things related to his complaints.</u> *Exhibit B and B-1, pg 13, 16, 24.*

# D.
## <u>IMPROPER ADMISSION OBJECTIONS AND RESPONSES</u>

Under Rule 36(a)(4) of the Federal Rules of Civil Procedure, a party responding to requests for admissions must either admit the stated matter or respond in the following manner:

> "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."

Under Rule 36(a)(5), if the defendant objects to a request for admission, it must state the grounds for the objection **succinctly.**

Defendant failed to properly admit or deny said admissions. Instead, and despite plaintiff conferring and asking that such responses comport with the rules, it took the opportunity to double-down on its improper, self-serving narrative.

For instance, in admissions numbers 16 – 18, defendant objected as follows: "Xcalibur objects to this request to the extent it fails to recognize that hiring and retention of an employee is made on a case-by-case basis." *See Exhibit D-1 (part 1) pages 7-8.*

There is more. *After* defendant responded as quoted above, it responded, "Xcalibur expects all employees, once hired, to adhere to its Company Policies and Procedures, Driver Policies and Procedures, and Driver Responsibilities." *See Exhibit D-1 (part 1) pages 7-8.*

Such is highly improper. <u>Based thereon, Plaintiff Johnson asks the Court to strike all such commentary and admit or deny per the rules.</u>

Beginning at admission numbers 25 – 170, defendant's objections remain improper. *See Exhibit D-1 (part 1, part 2 and part 3) beginning on page 10 through 50.* To be sure, Plaintiff

Johnson's requests each ask about one specific driver. Notwithstanding, defendant objects and references "a review of the full employment records of 16 separate employees…" and then names all 16 employees. *Id.*

Plaintiff asks the Court strike said commentary and admit or deny per the rules.

In addition to improper objections that include self-serving commentary, defendant's admissions are illogical.

Admission numbers 101 and 102 are the perfect examples of discovery abuse by defendant and its counsel.

**REQUEST FOR ADMISSION NO.101.**
Admit that Bruce Johnson was never disciplined for any encounters involving Christopher Johnson.

**REQUEST FOR ADMISSION NO.102.**
Admit that Christopher Johnson was never disciplined for any encounters involving Bruce Johnson. *See Exhibit D-1 (part 2) page 31.*
==========

These are the exact same admission requests except #101 asks whether Bruce Johnson was ever disciplined for encounters involving Plaintiff. Defendant objected as vague and did not answer.

Yet, when asked about Plaintiff Johnson in #102, defendant admitted same.

Why is the request vague in #101 as to Mr. Johnson and thus warranting no response but unambiguous and deserving of a response as to Plaintiff Johnson?

Based thereon, Plaintiff Johnson asks the Court order defendant to truthfully and properly answer all such admissions.

**E.**
**HISTORY OF SIMILAR COMPLAINTS ~**
**Interrogatory #10, Production #41, 82, 113-118**

**INTERROGATORY NO. 10:**
Identify any and all persons (other than Plaintiff) who, from January 1, 2015 to present, have filed - whether internally or externally - a lawsuit, complaint, administrative charge, or claim

(collectively "complaint") of racial harassment, race discrimination, retaliation or workplace violence and threats against Defendant setting forth as to each: (i) person receiving the complaint, (ii) the exact nature of the complaint, (iii) all conversations had with complainant about such complaint, (iv) the investigation undertaken as a result of such a complaint, (v) the individuals involved in said complaint including witnesses interviewed, (vi) dates of each such action, and (vii) the details of each investigation. *Exhibit A at pg 11 and Exhibit A-1 at pg 8.*
=====================

In Interrogatory #10 outlined above and beginning only two years prior to Plaintiff Johnson's hire, plaintiff seeks the identity of any persons who made claims against defendant involving race, retaliation, or violence. Defendant failed to fully answer this interrogatory and instead made meritless objections such as this information was "equally available to Plaintiff." How? How would Plaintiff Johnson know of internal complaints of such? Or of all charges of discrimination filed with the EEOC? Defendant referenced one other complaint but failed to answer as to: its investigation and the outcome of such. Is Jorge Garza even a proper comparator? Which location did he work? Who were his superiors?

And yet, whether others have been subjected to discrimination, workplace violence (which may be rooted in racism though not specifically characterized as such) or retaliation is relevant. Whether defendant behaved the same way as to each such complaint is also relevant. Whether those claims are against the same players named in Plaintiff Johnson's suit is important.

As such, this request provides Plaintiff Johnson with potential witnesses and intent, habit, or modus operandi, among other things admissible per FRE 404.

Too, plaintiff's production requests #41, 82, 113-118 correlate with interrogatory #10. Based thereon, Plaintiff Johnson asks the Court to order defendant respond to said interrogatory and production requests. *Exhibit B and B-1, pg 15, 26 and D and D-1, pgs 59-61.*

**F.**
**ASSIGNED EQUIPMENT ~**
**Interrogatory #3, Production Numbers #15, 16, 17, 18, 20, 22, 75**

**INTERROGATORY NO. 3:**
List every driver who worked or performed duties for Defendant at the Jal, New Mexico location from **June 1, 2017 to July 1, 2018**, setting forth as to each:

    a) Identify his or her shift e.g., night or day;

    b) **All vehicles (e.g., trucks/tractors and trailer/tanker) they used each day they worked for Defendant including the assigned number like "Tractor 3032," driver's license plate, year of the vehicle, and year acquired by Defendant;**

    c) **All repairs, maintenance, replacements or work requested or suggested on each such vehicle <u>and</u> the dates of such request or suggestion;**

    d) **All repairs, maintenance, replacements or work performed on each such vehicle including identifying the mechanic who performed such work <u>and</u> the dates such work was completed;**

    e) **All decision-makers involved in assigning such vehicles to said employees; and**

    f) **As it relates to Tractor 3032, Tractor 3033, Tractor 3034, and Tractor 3035, list all drivers who used said tractors each day during this timeframe and all decision-makers involved in assigning such vehicles to said employees**. *Exhibit A at pgs 7-8 and Exhibit A-1 at pg 5, (Emphasis added).*

=====================

In Interrogatory #3 outlined above and the corresponding production requests, plaintiff asked for each drivers' assigned vehicle numbers including the date said vehicles were acquired or used by defendant for a simple one-year period e.g., Plaintiff's tenure. Plaintiff also asked for the repair history of each such truck and tractor. The information is sought because, again, plaintiff contends that his Anglo and Hispanic counterparts were assigned newer, more reliable trucks though they had less seniority than Plaintiff. He further contends such assignment was contrary to defendant's policies and practices and was discriminatory in nature. Moreover, by virtue of having an unreliable truck, Plaintiff was subjected to down-time negatively impacting his pay and spills.

Defendant **failed** to provide any such information beyond a spreadsheet someone created representing who drove the four (4) new trucks bought. *See Exhibit I.* Did it lease any? Where did defendant get the information used to create said spreadsheet? <u>Plaintiff would like to have access</u>

to the original such data.  Though aware of this impending suit since October of **2018**, defendant indicated that it "no longer has access" to such information as of December of **2019.** Defendant had a duty to preserve all such information and failed to do so.  Defendant should be compelled to provide such or be subject to spoilation.

Based thereon, Plaintiff Johnson asks the Court to order defendant respond to said interrogatory and production requests fully including producing data used to complete the spreadsheet in Exhibit I or be subjected to a spoilation instruction. *See Exhibit B and B-1, pgs 7-9, 24,* Production Numbers #15, 16, 17, 18, 20, 22, 75.

### G.
### CONDITION OF THE TRUCKS ~
### Production #22, 23, 24, 31, 93-98, 99-100, 103, 108, 109

Plaintiff contends that Defendant's fleet of trucks were in terrible condition. His truck, in particular, was old and unreliable.  Plaintiff was terminated after two spills wherein the barrel counter did not work and there was no way to estimate the amount of oil therein. A manager averred that he would not have disciplined Plaintiff for either spill given that Plaintiff was loading and/or unloading blindly given that the barrel counter was broken.

Plaintiff asked Defendant to provide a history of the repairs requested on all such fleet generally _and_ involving barrel counters specifically from January 2016 to 2019.

Defendant objects noting that it will only produce repairs requested by plaintiff. Such is not useful given that Defendant had two sets of drivers using its trucks on any given day: a day driver and a night driver.  Plaintiff must discover the repairs that *any* driver and *any* fleet. *See Exhibit B and B-1, pgs 9,10, 12, and Exhibit D and D-1, pgs 52-58,* Production numbers #22, 23, 24, 31, 93-98, 99-100, 103, 108, 109.

**H.**
**TRAINING REGARDING DISCRIMINATION AND DEFENDANT'S**
**DEFENSES ~ Production #49, 124-125**

**REQUEST FOR DOCUMENTS NO. 49:**
From **January 1, 2014 to present,** all documents, recordings, videos, photographs, correspondence, or tangible things that evidence race discrimination and retaliation **training** and policies communicated to your staff. *See Exhibit B-1, Production #49, pg 17 (Emphasis added).*
=================

A possible defense mechanism asserted by a defendant in employment discrimination cases is the notion that defendant trained its staff regarding discrimination.

Based thereon, Plaintiff asked for proof of such.

Defendant responded that it "has produced its company **policies** responsive to this request **during Plaintiff's employment**." *See Exhibit B-1, Production #49, pg 17.* Such is not completely responsive to Plaintiff's production, which dates from January 2014 to present and includes training documents.

Based thereon, Plaintiff Johnson asks the Court to order defendant produce proof of discrimination and retaliation training from January 1, 2014 to present. *See Exhibit B and B-1, pgs 17 and Exhibit D and D-1, pgs 62 and 63, Production numbers #49, 124-125.*

**I.**
**HIRING QUALIFICATIONS ~**
**Admissions #10-22, Production 110-11**

Defendant hired Plaintiff in June of 2018. Before Defendant hired him, it conducted an exhaustive background check on Plaintiff. Notwithstanding what it learned pre-hire, Defendant hired Plaintiff.

Now, Defendant wishes to defend this suit by making much to do about some of the things from Plaintiff's past work experiences that it either learned expressly or failed to ask before it hired

him including but not limited to prior disagreements with coworkers and DOT accidents.

To defend against such, Plaintiff asked Defendant to admit that it hired drivers with prior DOT violations and criminal records. Defendant failed to respond.

If Defendant is going to use Plaintiff's past against him, all other such drivers' backgrounds should be discoverable.

### J.
### SALE OF ASSETS ~ Production # 112, 121, 123

Plaintiff filed his initial charge of discrimination with the EEOC on October 24, 2018; he amended such on February 28, 2019.

Defendant sold its business on December 31, 2019 - 10 months *after* Plaintiff's amended charge.

Plaintiff contends that Defendant's sale of assets is concerning and was meant to avoid responsibility in this suit. Plaintiff wishes to discover the details of said sale.

## V. ARGUMENT & AUTHORITY

A party may move for an order compelling responses to discovery requests when the opposing side has illegitimately refused or otherwise failed to fully respond to discovery requests propounded under said Rules.

The primary purpose of discovery is to "allow the parties to develop fully and crystallize concise factual issues for trial." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973).

## VI. CONCLUSION

There is clear evidence of discovery abuse.

Based thereon, Defendant should be sanctioned and made to: assist in locating and deposing Mr. McKinnon (and any other undisclosed witnesses) at defendant's expense, re-produce

Decisionmaker Jeff Maronen for his deposition at defendant's expense, compensate plaintiff's counsel for time preparing for and deposing said witnesses, and pay said deposition fees.

Additionally, defendant should be made to produce the above information (verified) and/or documents in 15 business days from the Court's order. Accordingly, Plaintiff respectfully requests this Court issue an order compelling Defendant to provide the above information and/or documents and that the Court grants all other relief, in law or equity, including attorney's fees and costs, to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ Katrina Patrick*

_____
Katrina Patrick
Attorney-in-Charge
State Bar No. 00797218
Texas Bar No. 22038
6575 West Loop South #500
Bellaire, Texas 77401
Telephone: (713)796-8218

**ATTORNEY FOR PLAINTIFF**
**CHRISTOPHER JOHNSON**

**CERTIFICATE OF CONFERENCE**

Plaintiff's counsel conferred with defense counsel regarding such on February 1, 2021, August 23, 2021, September 7, 2021, September 9, 2021, and September 21, 2021. As of the time of this filing, the parties were unable to reach an agreement. If the parties reach an agreement, the undersigned will immediately notify the Court.

*/s/ Katrina Patrick*

Katrina Patrick

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of September 2021, this instrument was filed pursuant to the electronic filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division, and that service will be further made in compliance with said protocols.

*/s/ Katrina S. Patrick*

_____

Katrina S. Patrick