IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JOHNSON, | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. No. 4:19-CV-02996 |
| XCALIBUR LOGISTICS, | § § § | |
| Defendant. | § | (JURY TRIAL DEMANDED) |

PLAINTIFF'S MOTION TO COMPEL
DEFENDANT'S DISCOVERY RESPONSES AND REQUEST FOR ORAL HEARING

# EXHIBIT H

1. *Termination for a Spill/Overflow When Other Colleagues Were Not.*

30. Johnson cannot prove race discrimination with respect to being terminated for his overflow incidents when other employees were not. Xcalibur's decision to terminate Johnson following his spill/overflow incidents was not made on the basis of race, and Johnson cannot demonstrate Xcalibur terminated him because of his race.

31. At the Jal, New Mexico location where Johnson was employed, 18 separate spill/overflow incidents occurred in 2017 and 2018, including Johnson's two spills/overflows. (Xcalibur's Verified Answer to ROG No. 1, App. 25-26.) Of those 18 spills/overflows, 9 terminations resulted - including Johnson and other employees who identified as Hispanic, African American, and two or more races. (*Id.*) Indeed, Johnson was not subject to termination following his first spill incident, he instead received a final written warning. (App. 6-9.) This is because, per the deposition testimony of Jeffrey Maronen, former Xcalibur Vice President, the decision to terminate for a spill is dependent on the circumstances of the spill including the events surrounding the spill, how it took place, and any manager recommendations. (Maronen Depo. Tr. at 107:7-17, App. 105.) Maronen described how some spills could be small, compared to other sizeable spills like a trailer overflowing. (Maronen Depo. Tr. at 107:18-24, App. 105 ["The trailer overflowing is a really big one."].) It was only when Johnson, less than two months after his first spill, was involved in a second spill/overflow of his trailer that Xcalibur terminated him for failure to follow procedures. (App. 1-2, 72.) Xcalibur's Driver Policies are clear that any employee may be immediately disqualified and terminated for violating any Company policy, including (1) leaving the immediate loading or unloading area while product is flowing, or (2) being involved in two preventable accidents within a twelve-month period. (App. 21-23.)

supervisors and managers when a truck was exceeding the speed that the GPS satellite has the road…listed as." (Maronen Depo. Tr. at 91:9-13, App. 99.) Xcalibur's supervisors were notified as to speed alerts by an automated system, which certainly is an inherently non-discriminatory method. (Miller Depo. Tr. at 21:2-4, App. 91 ["each truck had a machine … it would let them know that they were driving too fast."].) However, there was also no adverse employment action from Johnson receiving written warnings for speeding, because the warnings given to Johnson did not result in termination, loss of pay, or a similar caliber of action. Therefore, Johnson's allegations fall short of an "adverse employment" action. *See McCoy,* 492 F.3d at 559.

40. Even if Johnson could make a *prima facie* case, Johnson has ==failed to offer any evidence of disparate treatment of similarly situated employees out==side his protected class other than his subjective assertions. Johnson has no direct or circumstantial evidence to support his allegations that Xcalibur discriminated against him based on race, and his subjective belief is insufficient evidence to survive summary judgment. It is settled law in the Fifth Circuit that an "employee's subjective belief that []he was the victim of discrimination does not create an issue of material fact for trial." *Caro v. City of Dallas,* 17 F. Supp. 618, 626 (N.D. Tex. Aug. 20, 1998); *see also Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1420 (5th Cir. 1996) (en banc) ("It is more than well-settled that an employee's subjective belief that []he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion in the face of proof showing an adequate nondiscriminatory reason."). Johnson offers nothing more than his subjective belief that he was treated differently in receiving warnings for speeding, and that the alleged treatment was based on discriminatory reasons. Accordingly, as a matter of law, Xcalibur is entitled to summary judgment on Johnson's claim of discrimination